IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>SAMUEL ALEJANDRO MALAVER GUAICURBA,<br>Defendant. | **8:26-CR-7**<br><br>**ORDER ON THE GOVERNMENT'S MOTION FOR REVIEW OF RELEASE ORDER** |

This matter is before the Court on the Government's Motion for Review of Release Order (Motion for Review) asking the Court to overrule a magistrate judge's order granting defendant Samuel Alejandro Malaver Guaicurba pretrial release. Filing 62. On motion of the Government, the Court stayed the magistrate judge's release order pending the Court's ruling on the Motion for Review. Filing 220 (Motion for Stay); Filing 223 (Order Staying Magistrate Judge's Release Order). The Court ordered the defendant to file a written response to the Government's Motion for Review. Filing 223. On September 8, 2026, the defendant appeared before United States Magistrate Judge Ryan C. Carson for an Initial Appearance and represented that he would not file a response to the Government's motion. Filing 255. The Court has conducted a *de novo* review of the record in this case. For the reasons stated below, the Government's Motion for Review is granted, and the magistrate judge's release order is revoked.

## I. BACKGROUND

On January 21, 2026, the grand jury in the District of Nebraska returned an Indictment charging the defendant with two counts. Filing 1. Count I charges the defendant with Conspiracy to

Commit Bank Fraud under 18 U.S.C. § 1349, and Count II charges the defendant with Conspiracy to Commit Bank Burglary and Fraud and Related Activity in Connection with Computers in violation of 18 U.S.C. § 371. Filing 1 at 1–10. The Indictment also alleges a forfeiture allegation. Filing 1 at 16. The government's proffer directs the Court's attention to background circumstances thoroughly explained in Case No. 8:26cr31. In that case, the Indictment alleges that members of an "ATM jackpotting conspiracy" would deploy malicious software (malware) designed to exploit the vulnerabilities of Automated Teller Machines (ATMs) and Interactive Teller Machines (ITMs), causing the machines to dispense cash without debiting an account. Case No. 8:26cr31, Filing 1 at 2–3, 7. That related case's indictment alleges that the jackpotting attacks served as a "revenue stream" for Tren de Aragua (TdA), "a violent transnational criminal organization that originated as a prison gang in Venezuela in the mid-2000s" and that has been designated as a Foreign Terrorist Organization by the United States Secretary of State. Case No. 8:26cr31, Filing 1 at 1, 3, 6. Although not as thoroughly explained in the Indictment charging the defendant, the Indictment in this case includes many of the same means and methods relating to jackpotting attacks specifically used by TdA. *See generally* Filing 1. The Government proffers that the circumstances relating to TdA alleged in Case No. 8:26cr31 are just as related to this case and that the defendant has been "identified as part of TdA's ATM jackpotting conspiracy." Filing 220 at 3

On August 6, 2026, a United States Magistrate Judge for the Northern District of Illinois held a detention hearing with respect to the defendant. Filing 7. The magistrate judge issued a written order saying that "the Government failed to meet its burden as it related to danger to the community [but] did meet it[s] burden as it related to risk of flight. While addressing the reasons for detention, the Court noted that if a third-party custodian was presented, the Court may reconsider detention." Filing 7 at 1. The defendant's oral motion to continue the detention hearing was granted. Filing 7 at

1. On August 12, 2026, the defendant proposed his "mother as a potential third-party custodian." Filing 8 at 1. The magistrate judge found that the defendant's mother was "suitable" and granted pretrial release pursuant to certain conditions. Filing 8 at 1. The magistrate judge granted the Government's motion to stay the release order. Filing 8 at 1. The Government thereafter filed a Motion for Stay and Review of Release Order in the District of Nebraska, requesting that this Court review and overrule the magistrate judge's order. Filing 220. With the motion, the Government filed eight exhibits. Filing 222; Filing 222-1 through Filing 222-8.

In its Motion for Review, the Government proffers that a designated foreign terrorist organization, Tren de Aragua (TdA), engages in various criminal activities, including the commission of "jackpotting attacks targeting financial institutions in the United States and internationally." Filing 220 at 3. The Government avers that TdA members "commit murder, assault, and other acts of violence to enforce and further the organization's criminal activities." Filing 220 at 3.

The Government avers that the defendant is a "part of TdA's ATM jackpotting conspiracy." Filing 220 at 3. According to the Government, "[w]hile never captured on camera, [the defendant] has been identified repeatedly as being in the vicinity of ATM jackpottings almost contemporaneously with the ATM jackpottings in vehicles used to commit ATM jackpottings with known ATM jackpotters." Filing 220 at 3. The Government avers that given the different roles of ground operations crew members, "it is not uncommon for individuals involved to not be captured on ATM surveillance footage." Filing 220 at 4. The Government proffers that the evidence strongly shows that the defendant was a member of the conspiracy. Filing 220 at 4. The Government avers *inter alia* that the defendant was stopped near North Platte, Nebraska, and was driving a vehicle owned by a defendant in 8:25cr190 that had been used in multiple ATM jackpottings, including "the

February 1, 2025 ATM Jackpotting at 5 Star Community Credit Union in Mount Pleasant, Iowa and the April 9, 2025 ATM Jackpotttings at Heritage Bank in Grand Island, Nebraska and Five Points Bank in Grand Island, Nebraska." Filing 220 at 5. The Government also avers that the defendant's movements place the defendant near jackpottings in Central Nebraska around when those jackpottings occurred. Filing 220 at 5–6.

According to the Government, a 2008 red Kia Optima with Illinois license plate FE60799 was used in jackpottings in Kearney, Nebraska, and Milford, Nebraska, on April 27, 2025. Filing 220 at 4. The Government avers that "[o]n May 4, 2025, the 2008 red Kia Optima was found at Scheels in Missoula, Montana after officers responded to a shoplifting call." Filing 220 at 7. The Government avers that "[u]pon officers approaching him, [the defendant] fled on foot refusing to comply with verbal commands to stop." Filing 220 at 7. The evidence shows that law enforcement had to deploy their tasers several times to apprehend the defendant. Filing 222-4 at 14–19. After a search warranted was executed on the Kia Optima, law enforcement found cell phones, a mask, a wireless keyboard, a charger, a mobile hot spot, and rubber bands—all items that the Government avers are "consistent with tools used in ATM jackpotting[s]." Filing 220 at 7; Filing 222-5.

The Government avers that it appears that the defendant has failed to appear for court proceedings relating to a traffic citation, that the defendant is from Venezuela, and that there is an ICE detainer in place for the defendant. Filing 220 at 7–8; Filing 222-6 (Detainer). The Court again notes that the defendant has represented that he will not be filing a response.

## II. APPLICABLE STANDARDS

A magistrate judge's decision to release or detain a defendant pending trial is governed by 18 U.S.C. § 3142. Under 18 U.S.C. § 3145(a), "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation" of a magistrate judge's

order granting a defendant pretrial release. 18 U.S.C. § 3145(a)(1). The Government's "motion shall be determined promptly." 18 U.S.C. § 3145(a). The district court's review of a magistrate judge's pretrial release order is *de novo*. *See United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc) (noting that the district court proceeds *de novo* in its review of a magistrate judge's pretrial bond order); *United States v. Cook*, 87 F.4th 920, 921 (8th Cir. 2023) (referencing the district court's *de novo* review of the magistrate judge's pretrial detention order).

Under 18 U.S.C. § 3142(e)(1), a defendant will be detained pending trial if there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community." The Eighth Circuit Court of Appeals has explained that the Government bears different burdens of proof for showing that the defendant is a flight risk, *i.e.*, that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant, and for showing that the defendant is a safety risk, *i.e.*, that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community. *See United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). Specifically, pretrial detention is warranted "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance. . . ." *Id.* at 797 (emphasis and ellipses in the original) (quoting *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003)). In determining whether the Government has met its burdens to prove that the defendant is a flight risk and a safety risk, the Court considers the following factors:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

> terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including—
>
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III. LEGAL ANALYSIS

The Government argues that the defendant should be detained pending trial because "there are no conditions that will reasonably ensure his appearance" and because the defendant's "participation in criminal activity is connected to a designated foreign terrorist organization in criminal activity which poses a danger to people and communities beyond the victim banks and credit unions." Filing 220 at 8, 13. Naturally, the defendant has not provided any points of contention or dispute given that he has elected not to respond. The Court has conducted a *de novo* review of the record and finds that the Government has met its burden to prove that the defendant is both a flight risk and a safety risk. Accordingly, the Court concludes that the defendant shall be detained pending trial. Because the Court can determine this matter on the record before it, the Court further concludes that there is no need to hold a hearing. *See United States v. Martin*, 447 F.Supp.3d 399, 402–03 (D. Md. 2020) ("However, 'there is no statutory requirement that the court hold a hearing'

and the court 'retains the discretion to decide whether to hold a hearing.'" (quoting *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019))).

The Court has evaluated the four factors set out in 18 U.S.C. § 3142(g) in reaching this conclusion and "take[n] into account the available information concerning" those factors. The Court considered the "nature and circumstances of the offense[s] charged," Conspiracy to Commit Bank Fraud and Conspiracy to Commit Bank Burglary and Fraud and Related Activity in Connection with Computers and has determined that they support detention. The allegations in the Indictment are sufficiently serious in nature and suggest the defendant's participation in a complex wide-reaching scheme with direct ties to a designated Foreign Terrorist Organization, TdA, when considered with the Government's factual proffer and information in other related cases.

The Indictment alleges that "[b]etween in or around February 2024 and in or around January 2026, the defendants and other members of the conspiracy known and unknown to the Grand Jury committed or attempted to commit at least 55 ATM jackpottings of the Victim Banks. Between in or around February 2024 and in or around January 2026, the defendants committed or attempted to commit at least 43 ATM jackpottings of the Victim Credit Unions." Filing 1 at 4 (¶ 12). The Indictment also alleges millions of dollars in actual and attempted loss. Filing 1 at 5 (¶ 43). The defendant's alleged participation in the conspiracy, when paired with the Government's averments and information from related cases that suggest that the jackpottings are for a Foreign Terrorist Organization, is sufficiently serious to warrant detention. Filing 220 at 3. As noted in a related case, "The criminal activity alleged . . . is sophisticated and lucrative, and it apparently fits into a much bigger picture than the jackpotting attacks alone, as the Government contends that the proceeds obtained by the jackpotting attacks are funneled to TdA, which 'has an extensive portfolio of criminal activities to include, illegal gold mining, drug trafficking, firearms trafficking, commercial

sex trafficking, kidnapping, robbery, theft, fraud, and extortion.'" *United States v. Frangelys Llelamo Paredes*, Case No. 8:26-CR-31, 2026 WL 2606393, at *5 (D. Neb. Sept. 3, 2026); *see also Melendez Mayora*, 8:26-CR-31, 2026 WL 2455161 (D. Neb. Aug. 21, 2026).

Second, the Court has considered the "weight of the evidence" against the defendant and finds that this factor also weighs in favor of detaining the defendant pending trial. 18 U.S.C. § 3142(g)(2). The evidence the Government proffers strongly supports the understanding that the defendant was a member of the conspiracy. Filing 220 at 4. Among other things, the Government avers that the defendant was stopped near North Platte, Nebraska, and was driving a vehicle owned by a defendant in 8:25cr190 that had been used in multiple ATM jackpottings, including "the February 1, 2025 ATM Jackpotting at 5 Star Community Credit Union in Mount Pleasant, Iowa and the April 9, 2025 ATM Jackpotttings at Heritage Bank in Grand Island, Nebraska and Five Points Bank in Grand Island, Nebraska." Filing 220 at 5. Further, a 2008 red Kia Optima with Illinois license plate FE60799 appears to have been used in jackpottings in Kearney, Nebraska, and Milford, Nebraska, in April 2025. Filing 220 at 4. The Government avers that "[o]n May 4, 2025, the 2008 red Kia Optima was found at Scheels in Missoula, Montana after officers responded to a shoplifting call." Filing 220 at 7. The evidence shows that "[u]pon officers approaching him, [the defendant] fled on foot refusing to comply with verbal commands to stop." Filing 220 at 7. The evidence shows that law enforcement had to deploy their tasers several times to apprehend the defendant. Filing 222-4 at 14–19. After a search warranted was executed on the Kia Optima, law enforcement found cell phones, a mask, a wireless keyboard, a charger, a mobile hot spot, and rubber bands—all items that appear to be "consistent with tools used in ATM jackpotting[s]." Filing 220 at 7; Filing 222-5.

Third, the Court has examined the "history and characteristics" of the defendant, which decisively favor detention. 18 U.S.C. § 3142(g)(3). The defendant is from Venezuela and has an

immigration detainer. Filing 222-6. The evidence also more explicitly shows that the defendant is a flight risk given he resisted arrest and because law enforcement had to deploy their tasers multiple times to apprehend him. Filing 222-4. Further, the Government avers that the custodian that the magistrate judge found suitable for the defendant, his mother, is, herself, present in the country unlawfully and is awaiting removal proceedings, which the defendant does not contest considering he chose not to respond. Filing 220 at 11. Given the third-party custodian's own legal uncertainties, the defendant's other history and characteristics make detention all the more appropriate.

Lastly, the Court has considered "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g)(4). The Court's analysis on this factor relies on many of the factual circumstances discussed above. Relevant to this factor, as discussed elsewhere, is the connection between the alleged criminal activity and TdA. What the Court has explained in related cases such as *Galindez Lopez* is true here too: "The Court is particularly concerned with the role TdA is alleged to play in the offense charged and with the defendant's alleged connections to TdA given TdA's status as a designated Foreign Terrorist Organization and the violent criminal activities TdA is accused of perpetrating." 8:26-CR-31, 2026 WL 1506717, at *5 (D. Neb. May 29, 2026). The Court concludes that these facts weigh in favor of pretrial detention.

## IV. CONCLUSION

Based on the Court's *de novo* review of the record in this case—including the facts alleged in the Indictment, the Government's brief, and the proffered evidence—the Court finds that the Government has met its burden to prove by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance. The defendant has significant ties to Venezuela. Additionally, his immigration status in the United States and his

relationship to TdA suggest that it is more likely than not that the defendant poses a flight risk. Additionally, the defendant fled law enforcement on at least one prior occasion and resisted arrest. The Court also finds that the Government has met its burden to prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. The defendant is not charged with a violent offense. However, the Court believes the Government has proffered sufficient evidence at this time connecting the charged offense to a violent organization and connecting the defendant to both alleged members of and alleged conduct committed by that organization. Taken together, the nature and circumstances of the charged offense, the weight of the evidence against the defendant, his ties to Venezuela, the fact that he has resisted arrest, and his association with TdA members all demonstrate a high probability that the defendant poses a safety risk.

The Court therefore grants the Government's Motion for Review of Release Order and revokes the magistrate judge's order releasing the defendant pending trial.

Accordingly,

IT IS ORDERED:

1. The Government's Motion for Review of Release Order, Filing 220, is granted;

2. Defendant Samuel Alejandro Malaver Guaicurba is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel; and

4. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 14th day of September, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge